**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CE DESIGN LTD., an Illinois corporation, individually and as the representative of a class of similarly-situated persons, </br></br>       Plaintiff, </br></br> v. </br></br> AMORE MIO, INC., an Illinois corporation, and DOES 1–10, </br></br>       Defendants. | ) </br> ) </br> ) </br> ) </br> ) </br> ) No. 08 CV 3993 </br> ) </br> ) Judge Castillo </br> ) </br> ) </br> ) </br> ) |

**PLAINTIFF'S AGREED MOTION FOR LEAVE TO FILE AMENDED COMPLAINT
SUBSTITUTING JOHN PEZL AS PARTY PLAINTIFF, *INSTANTER***

NOW COMES Plaintiff, by and through its attorneys, and pursuant to Fed. R. Civ. P. 15, moves the Court for an order granting Plaintiff leave to file the attached Amended Class Action Complaint, *instanter*.

1.  Federal Rule of Civil Procedure 15(a) states that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). *See also Foman v. Davis,* 371 U.S. 178, 182 ("leave should be granted absent undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility").

2.  Plaintiff seeks leave to substitute John Pezl as Party Plaintiff. Pezl is the person whose name is on the credit card at issue.

3.  The proposed Amended Complaint substituting John Pezl as Party Plaintiff is attached hereto as Exhibit A.

4.  Defendant does not object to this motion.

2

WHEREFORE, Plaintiff, CE DESIGN LTD., prays that this Court grant it leave to file a First Amended Complaint and to substitute John Pezl as Party Plaintiff.

        Respectfully submitted,

        CE DESIGN LTD., individually and as the representative of a class of similarly-situated persons

By:   s/Brian J. Wanca
        One of Plaintiff's Attorneys

Brian J. Wanca
Ryan M. Kelly
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL  60008
Telephone:  847/368-1500

Phillip A. Bock
BOCK & HATCH, LLC
134 N. La Salle Street, Suite 1000
Chicago, IL  60602
Telephone:  312/658-5500

## **CERTIFICATE OF SERVICE**

      The undersigned attorney certifies that on July 21, 2008, he filed and caused a copy of the foregoing Motion for Leave to File Amended Complaint to be served upon all counsel of record via the Court's ECF system.

                                       s/Brian J. Wanca

| | |
|---|---|
| Brian J. Wanca | Phillip A. Bock |
| ANDERSON + WANCA | BOCK & HATCH, LLC |
| 3701 Algonquin Road, Suite 760 | 134 N. LaSalle Street, Suite 1000 |
| Rolling Meadows, IL  60008 | Chicago, IL  60602 |
| Telephone:  847/368-1500 | Telephone:  312/658-5500 |

**EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JOHN PEZL, individually and as the representative of a class of similarly-situated persons,  )<br>)<br>)<br>)<br>Plaintiff,  )<br>)         No. 08 CV 3993<br>v.  )<br>)         Judge Castillo<br>AMORE MIO, INC., an Illinois corporation, and DOES 1 through 10,  )<br>)<br>)<br>Defendants.  )<br>) | |

**FIRST AMENDED CLASS ACTION COMPLAINT**

1. Plaintiff, JOHN PEZL ("Plaintiff") brings this action to secure redress for himself and others similarly situated for violations by AMORE MIO, INC., ("Defendant") and DOES 1 through 10, of the Fair and Accurate Transactions Act of 2003 ("FACTA") amendment to the Fair Credit Reporting Act ("FCRA").

2. Specifically, Plaintiff alleges that, on credit or debit card receipts provided at the point of sale or transaction, Defendant printed more than the last five digits of the card number.

3. One provision of FACTA, codified as 15 U.S.C. §1681c(g), provides that:

> No person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number . . . upon any receipt provided to the cardholder at the point of sale or transaction.

4. This "truncation requirement" is designed to prevent identity theft.

5. The Federal Trade Commission has estimated that, each year, criminals fraudulently assume the identities of more than 9 million persons for financial gain, causing losses in excess of $50 billion.

6. Identity thieves obtain credit card receipts that are stolen, lost, or discarded and then use the information on them to engage in transactions. These identity thieves are commonly referred to as "carders" or "dumpster divers." This "low tech" method is more prevalent than the use of sophisticated electronic wizardry to obtain the information. *See e.g.*, Robin Sidel, "Identity Theft – Unplugged – Despite the High-Tech Threat, When You Get Ripped Off It's Usually Still the Old Way," Wall Street Journal, Oct. 5, 2006, p. B1.

7. Sophisticated identity thieves can replicate a credit card number using the last four digits of the card number.

8. To curb this means of identity theft, FACTA prohibits merchants who accept credit cards and debit cards from issuing electronically-generated receipts displaying more than the last five digits of the card number.

9. The Fair and Accurate Transactions Act of 2003 was enacted on December 4, 2003. FACTA is part of the Fair Credit Reporting Act, ("FCRA"), 15 U.S.C. §§ 1681 *et seq*, and gave merchants who accept credit or debit cards up to three years to comply with the truncation requirements. 15 U.S.C. §§ 1681c(g)(3)(A)-(B). FACTA required full compliance with its provisions no later than December 4, 2006 for all machines in use and in all transactions. 15 U.S.C. § 1681c(g)(3)(A).

10. FACTA provided two compliance deadlines: (1) Machines brought into use before January 1, 2005, must have been brought into full compliance before December 4, 2006; and (2) machines first used after January 1, 2005 were required to fully comply immediately.

11. Here, Plaintiff alleges that Defendant violated FACTA by failing to comply with the truncation requirement; specifically by printing more than the last five digits of the card numbers on receipts provided to cardholders. Furthermore, Plaintiff alleges that Defendant

violated FACTA recklessly by failing to protect Plaintiff (and a class of others similarly situated) against identity theft and credit or debit card fraud.

12. Defendant invaded the privacy of Plaintiff and the other class members by printing their protected, private information on receipts and permitting Defendant's employees access to that private information.

13. Plaintiff brings this action against Defendant based on Defendant's violation of 15 U.S.C. §§ 1681p *et seq*. Plaintiff seeks class-wide statutory damages, attorneys' fees, costs, and such other relief as the Court deems proper, including punitive damages the evidence shows them appropriate.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. §§ 1681p (FCRA).

15. Venue in this district is proper because Defendant do business here.

## PARTIES

16. Plaintiff, JOHN PEZL, is a person and consumer who resides in Cook County, Illinois. Plaintiff is a consumer whose name appears on the credit card and on the electronically generated receipt.

17. AMORE MIO, INC. is an Illinois corporation that operates the Amore Mio Restaurant located at 1457 W. Palatine Road, Hoffman Estates, Illinois.

18. Defendants are "persons that accepts credit cards or debit cards for the transaction of business" within the meaning of FACTA.

19. Defendants, DOES 1 through 10, are individual officers, directors, employees and agents of Defendants who authorized, directed, or participated in the violations of law complained of.

## FACTS

20. On April 11, 2007, after FACTA's final truncation requirement went into effect, Plaintiff received from the Defendant a computer-generated credit card receipt displaying more than the last five digits of Plaintiff's credit card from the Amore Mio Restaurant.

## CLASS ALLEGATIONS

21. Plaintiff brings this action on behalf of a class pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

22. The class is defined as: "All consumers to whom Defendant provided an electronically-printed receipt at the point of a sale or transaction after the applicable statutory deadline (after December 4, 2006 for machines in use before January 1, 2005 or immediately for machines first used after January 1, 2005) and which receipt displayed more than the last five digits of the purchaser's credit card or debit card number.[1]

23. The class is so numerous that joinder of all individual members in one action would be impracticable. The proposed class includes more than 100 persons.

24. Common questions of law or fact apply to the claims of all class members and those common questions predominate over questions affecting only individual members. The common questions include the following:

    (a) Whether Defendant printed sales or transaction receipts truncated credit or debit card numbers as FACTA required;

    (b) When Defendant put its credit and debit card machines into service;

    (c) Whether Defendant had a practice of providing customers sales or transaction receipts that failed to comply with FACTA's truncation requirement;

---

[1] Excluded from the Class are Defendant's officers and directors, Plaintiff's counsel, and any Judge or Justice presiding over this action.

  (d)  Whether Defendant violated FACTA;

  (e)  Whether Defendant's conduct was reckless;

  (f)  What amount of statutory damages the Court should order Defendant to pay; and

  (g)  Identification and involvement of the Doe Defendants.

25. Plaintiff's claims are typical of the claims of the other class members. Every class member's claims are based on the same legal theories and arise from the same unlawful and reckless conduct.

26. Plaintiff will fairly and adequately represent the class members. Plaintiff has no interests that conflict with the interests of the class members. Plaintiff has retained experienced counsel.

27. A class action is superior method to other available means for the fair and efficient adjudication of the claims of class members. Individual actions are economically unfeasible and impractical.

## **VIOLATION ALLEGED**

28. Defendants violated 15 U.S.C. § 1681c(g)(1), which provides that:

> . . . no person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number . . . upon any receipt provided to the cardholder at the point of sale or transaction.

29. With respect to machines first placed into use after January 1, 2005, 15 U.S.C. § 1681c(g)(3)(B) required immediate compliance with the provisions of 15 U.S.C. § 1681c(g)(1).

30. With respect to machines in use before January 1, 2005, 15 U.S.C. § 1681c(g)(3)(A) required compliance with the provisions of 15 U.S.C. § 1681c(g)(1) on or after December 4, 2006.

31. Defendant accepts credit cards or debit cards in the course of transacting business with persons such as Plaintiff and the other class members. In transacting such business, Defendant uses cash registers or other machines or devices that electronically print receipts for credit and debit card transactions.

32. After the effective date of FACTA, Defendant, at the point of sale or transaction, provided Plaintiff and each class member with one or more electronically-printed receipts. On each of those receipts, Defendant failed to comply with the truncation requirement.

33. FACTA was enacted in 2003 and gave merchants who accept credit or debit cards up to three years to comply with its requirements, mandating compliance for all machines no later than December 4, 2006.

34. Defendant knew or should have known of FACTA's truncation requirement.

35. On information and belief, VISA, MasterCard, the PCI Security Standards Council—a consortium founded by VISA, MasterCard, Discover, American Express and JCB—companies that sell cash registers and other devices for the processing of credit or debit card payments, and other entities informed Defendants about FACTA, including its specific requirements concerning the truncation of credit card and debit card numbers and Defendants' need to comply with same.

36. These requirements were widely publicized.

37. For example, in response to earlier state legislation enacting a similar truncation requirement, on March 6, 2003, the CEO of Visa USA, Carl Pascarella, explained that "Today, I am proud to announce an additional measure to combat identity theft and protect consumers. Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts. . . . . The first phase of this new policy goes into effect July 1, 2003

for all new terminals . . . ." "Visa USA Announces Account Truncation Initiative to Protect Consumers from ID Theft; Visa CEO Announces New Initiative at Press Conference with Sen. Dianne Feinstein," PR Newswire, March 6, 2003.

38. Within 24 hours, MasterCard and American Express announced that they were imposing similar requirements.

39. The card issuing organizations started requiring compliance with FACTA by contract, in advance of FACTA's mandatory compliance date.

40. For example, the August 12, 2006 edition of "Rules for Visa Merchants" (p. 62), distributed to and binding upon all merchants accepting Visa cards, expressly requires that "only the last four digits of an account number should be printed on the customer's copy of the receipt . . . . ." These statements were accompanied by a picture of a receipt showing precisely what had to be removed and could not be printed on receipts. VISA required complete compliance by July 1, 2006, five months ahead of the statutory deadline.

41. Defendant accept Visa cards and are parties to a contract requiring compliance with the above-quoted requirement.

42. These requirements were widely publicized. The following are illustrative.

43. On July 9, 2003, L. Richard Fischer of VISA USA presented a statement to the House Committee on Financial Services supporting the truncation requirements of what ultimately became FACTA. Mr. Fischer stated:

> Although Visa generally believes that the details of preventing
> identity theft should be left to financial institutions that are best
> suited to address ever evolving fraud techniques, Title II could
> provide important benefits to consumers and financial institutions
> alike by establishing workable identity theft provisions and
> ensuring that these provisions benefit from national uniformity.
> For example, Section 203 of Title II would prohibit any merchant
> or other entity that accepts credit cards and debit cards from

7

>   printing more than the last four digits of the card account number
>   . . . . upon receipts provided to cardholders at the point of sale.

44.     The Office of Thrift Supervision of the Treasury Department (the "OTS") is responsible for, *inter alia*, compliance with FACTA by federal savings banks. Toward this end, the OTS publishes an Examination Handbook for OTS field personnel to use when they perform an examination, or compliance audit, of a given financial institution. The February 2006 edition of the Handbook states:

>   **Truncation of Credit and Debit Card Account Numbers**
>
>   Ensure that electronically generated receipts from ATM and POS terminals or other machines do not contain more than the last five digits of the card number . . . . .

45.     Heartland Payment Systems, Inc. provides credit and debit card, payroll and related processing services to restaurant, hotel and retail merchants throughout the United States, and indicates on its website that it provides services to over 137,000 merchants. In 2003, Heartland broadly disseminated a pamphlet containing the following statement:

>   Your credit card terminal is now – or will soon be required by law or the bankcard associations to truncate – or limit – the information that can appear on electronically printed sales receipts.
>
>   What that means is that on all cardholder numbers:
>
>   •   All but the last four numbers of the card number must be obscured . . . .

46.     In 2006, Heartland broadly disseminated a second pamphlet including the following statement:

>   **Make every transaction a safe one.** \*\*\*\*
>
>   • The cardholder's receipt . . . ***should only include*** the last 4 or 5 digits of the card number. \*\*\*\*

8

47. Commerce Bank, another credit card processor, sent "Merchant Compliance Awareness" notices to its customers during 2004. Those notices stated that all but the last four digits of the cardholder's account number must be suppressed from and not displayed on the receipt.

48. Many restaurant and retail trade associations notified their merchant members of FACTA's truncation requirements, mirroring Visa's truncation requirements. For example, in its February/March 2005 Newsletter, the Virginia Retail Merchants Association reported that "FACTA says receipts for credit and debit card transactions may not include more than the last five digits of the card number . . . ."

49. In the April 23, 2003 edition of the monthly magazine for the National Association of Convenience Stores, an article titled "Visa USA Targets Identity Theft," appeared which included the following statement:

> [A]t a press conference held last month with Sen. Dianne Feinstein (D-CA), Visa announced its account truncation security policy. This protects consumers from identity theft by limiting cardholders' information on receipts to the last four digits of their accounts. . . . Feinstein has introduced legislation to combat identity theft.

50. The April 2005 edition of the Food Industry Advisor, the newsletter for the Pennsylvania Food Merchants Association and Pennsylvania Convenience Store Council, included an article regarding FACTA's truncation requirements and including the following language:

> [A]ccording to the FACTA Act, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number . . . upon any receipt provided to the cardholder at the point of sale or transaction . . . .

9

The same article appeared in the April 2005 Edition of the NACS Magazine, published by the National Association of Convenience Stores.

51. In its Spring 2004 Newsletter, the Connecticut Restaurant Association Newsletter included an article regarding Requirements for Credit Card Truncation stating:

> [T]here is currently no Connecticut state law, so the two ruling requirements come from VISA and a new Federal Fair Credit Reporting Act signed in December 2003.
>
> Truncation requires that all but the last four digits of the cardholder account number . . . be suppressed on the cardholder copy of the transaction receipt generated from all electronic terminals . . . .

52. After FACTA's enactment, the Wisconsin Restaurant Association issued a "Credit Card Transaction" Alert to its members, which stated:

> You may have been hearing about credit card truncation lately. This is what you need to know.
>
> Credit card truncation removes all but the last four (or five) digits of a credit card account number . . . from the sales receipt. For example: A non-truncated receipt would list:
>
> Acct. # 1234 5678 7654 3210 Exp. 10/05
>
> while a truncated receipt would show:
>
> Acct. #: **** **** **** 3210 Exp ****
>
> The federal Fair and Accurate Credit Transaction Act of 2003, prohibits any person that accepts credit cards or debit cards from printing . . . more than the last five digits of the card number upon any terminal-generated receipt provided to the cardholder at the point of sale . . . .

53. An article appeared in the January 2005 edition of the Massachusetts Restaurant Association Newsletter notifying Association members that both Visa and MasterCard require truncation of . . . all but the last four digits of the cardholder account number.

54. Similar information was disseminated by the Ohio Restaurant Association, the Oklahoma Restaurant Association, and a significant number of other restaurant trade associations, and retail merchant trade associations.

55. An article was published in the March/April 2006 Edition of the Ohio Independent Automobile Dealers' Association Dealer News Magazine entitled, "What You Should Know About Credit and Debit Card Procession and the FACTAs about Card Truncation." The article states:

> What is Card Truncation? This federal law sets deadlines by which the receipt electronically printed from a credit card sale must be truncated—meaning, the receipt given to the customer shows no more than the last five digits of the customer's credit card number . . . .
>
> Business owners are responsible for merchant account compliance with the truncation regulations and must make sure their printed cardholder receipts do not contain . . . or full account numbers.

This same article appeared in the March/April edition of the West Coast Independent Automobile Dealer News.

56. The Independent Insurance Agents & Brokers of America circulated a report to its members dated June 5, 2005 titled: "Overview of the Fair Credit Reporting Act, the Fair and Accurate Credit Transactions Act, and the Drivers Privacy Protection Act." In relevant part, this publication stated:

> Under the FACTA Act, businesses and others accepting credit or debit cards for payment may not print more than the last five digits of the card number . . . upon any receipt provided to the cardholder at the point of sale.

57. The November 18, 2004 edition of the Compliance Challenge, published by the Credit Union National Association News, stated, "FACTA prohibits anyone that accepts

11

credit/debit cards to print more than the last 5 digits of the card number . . . on any receipt at the point of sale or transaction . . . ."

58. Truncation standards, including the standards reflected in the Visa Merchant Rules and in FACTA, permit the publication of the last four or five digits of customer account numbers on the receipt presented to customers at the point of sale. The publication of this minimal amount of account information is sufficient to facilitate merchant account reconciliation, processing of returns, etc. In isolation, the publication of *only* the last four or five digits of a customer account number significantly limits the extent to which a potential identity thief can effectively use customer receipts disseminated at the point of sale to facilitate identity theft.

59. Publishing or making known . . . with the last four or five digits of the customer's account number, exponentially increases the possibility of identity theft, which is the palpable reason that Visa, and then Congress, required the truncation of expiration dates.

60. Credit and debit card account numbers are not randomly generated. Instead, account numbers reflect an internal coding scheme set forth by the International Organization for Standardization ("ISO") 7812, which defines the content in the cards' magnetic strips. Consistent with this standard, every credit card number consists of the following: (a) a single digit Major Industry Identifier ("MII"); (b) an issuer identification number ("IIN"); (c) a number unique to the card; and (d) a check digit.

61. The MII identifies the industry of the issuer of the card.

62. The IIN consists of the first six digits of the card number and identifies the specific issuer of the card.

63. The seventh through next to the last digits, up to a maximum of 12 digits, are the numbers unique to the card.

64. The last digit is a "check digit" that is not randomly assigned, but instead calculated by a defined algorithm. Therefore, the "check digit" is derivative of the other numbers in the credit card number.

65. Astute identity thieves are familiar with this coding paradigm and can use sophisticated mathematical modeling to decipher account numbers.

66. An identity thief who acquires a receipt containing the last four or five digits of a credit card number . . . can use that data in an attempt to dupe the cardholder, or other potential information sources, into disclosing additional confidential financial information relating to the cardholder. The more information that is disclosed on the receipt, the easier it is to pilfer additional confidential information.

67. The FTC issued rules governing interpretation of the statute, including:

> According to the federal Fair and Accurate Credit Transaction Act (FACTA), the electronically printed credit and debit card receipts you give your customers must shorten – or truncate – the account information. You may include no more than the last five digits of the card number . . . . For example, a receipt that truncates the credit card number and deletes the expiration date could look like this:
>
> ACCT: ***********12345

*See* Bureau of Consumer Protection, Federal Trade Commission, *Slip Showing? Federal Law Requires All Businesses to Truncate Credit Card Information on Receipts* (May 2007).

68. The cost of truncating credit and debit account numbers is minimal.

69. Most of Defendants' business peers and competitors brought their credit and debit card receipt printing processes into compliance with FACTA by programming their card

machines and devices to comply with the truncation requirement. Defendants could have done the same.

70. FACTA creates a statutory right of privacy.

71. Defendant made known to its staff and possibly others Plaintiff's private credit card information, violating Plaintiff's right of privacy. Stated differently, by publishing Plaintiff's private credit card information to Defendants' staff and possibly others, Defendants violated Plaintiff's right of privacy. Defendants similarly violated the privacy rights of the other class members.

72. Defendant recklessly disregarded FACTA's requirements and continued to use cash registers or other machines or devices that print receipts in violation of FACTA. 15 U.S.C. § 1681n.

73. Therefore, Defendant is liable to Plaintiff and the other class members for, among other things, "any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000." 15 U.S.C. § 1681n(A).

WHEREFORE, Plaintiff, JOHN PEZL, demands judgment in favor of Plaintiff and the other class members and against Defendant as follows:

A. That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B. For statutory damages of $100 to $1000 per violation;

C. For attorney's fees, litigation expenses, and costs; and

D.    For such other and further relief as the Court may deem proper, including punitive damages if appropriate.

                                        JOHN PEZL, individually and on behalf of all others similarly situated,

                              By:    s/Brian J. Wanca
                                        One of his attorneys

Brian J. Wanca  
ANDERSON + WANCA  
3701 Algonquin Road, Suite 760  
Rolling Meadows, IL  60008  
Telephone:  847/368-1500  

Phillip A. Bock  
BOCK & HATCH, LLC  
134 N. LaSalle Street, Suite 1000  
Chicago, IL  60602  
Telephone:  312/658-5500  

15